*508 OPINION OF THE COURT
David Friedman, J.
Petitioner landlord commenced a nonpayment proceeding against respondent tenant by conspicuous place service of a notice of petition and petition alleging that the tenant had failed to pay rent for the months of November 1988 to January 1989. An answer was not interposed, as a result of which a final judgment of possession was entered on default and a warrant issued. Execution of the warrant occurred on April 27, 1989, after which the tenant promptly sought an order to show cause restoring her to possession of her apartment.
In an affidavit in support of the order to show cause the tenant contended that her failure to answer the petition was caused by the fact that she never received it, finding out about the proceeding only when she was served with a 72-hour notice. She also asserted, by way of defense to the nonpayment proceeding, that her rent had been paid.
The day after the eviction, April 28, 1989, the order to show cause presented by the tenant was signed. It provided that the tenant be immediately restored to possession and recited that restoration to possession was premised on the tenant’s presentation of canceled rent checks and the fact that the 72-hour notice, while dated April 19 is postmarked April 24.
The order to show cause was scheduled to be heard on May 1, 1989. On such date the tenant, apparently because she had already resumed possession, withdrew her motion.
The tenant now places this withdrawal in issue by means of a motion brought on by another order to show cause which seeks, as did the original order to show cause, to set aside the final judgment of possession entered in favor, of the landlord. In support of such relief, she again avers lack of service of the notice of petition, and petition and payment of the rent. She asserts further that when she appeared in court on May 1, 1989, her appearance was pro se while the landlord was represented by counsel and that she never actually withdrew her motion but left after being told by the Judge then presiding in Part 19, "O.K., you can go.”
Having set forth this factual backdrop for the motion, the tenant then sets forth the actual basis and need for the requested relief. She has commenced a separate action seeking damages for her eviction from the apartment and in such suit the landlord has interposed as a defense the existence of a *509 judgment of possession in this proceeding. It is the tenant’s position that had she understood the significance of the matter, she would never have agreed to withdrawal of the motion seeking restoration to possession but would have insisted on vacatur of the judgment of possession.
In opposition to the motion, the landlord maintains that the tenant’s sole purpose is to bolster her independent action for damages for wrongful eviction and that this court may not be used for such purposes.
At the outset, it must be noted that there is no claim by the tenant that the Judge presiding in Part 19 when her motion was marked withdrawn in any way infringed on her right to counsel. Rather, the tenant essentially concedes that she seeks relief in order to affect a different lawsuit.
What the tenant is seeking is to vacate a judgment of possession based upon nonpayment of rent entered upon a default. It is by now established that such relief may be granted by this court even after execution of a warrant (CCA 212; CPLR 5015 [a] [1]; Iltit Assocs. v Sterner, 63 AD2d 600; Lindsay Park Houses v Greer, 128 Misc 2d 775, 776-777). Here, the order to show cause which restored the tenant to possession coupled with her continuing occupancy and payment of rent certainly resuscitated the landlord-tenant relationship so as to provide a jurisdictional predicate for the relief tenant seeks (cf., New York City Hous. Auth. v Torres, 61 AD2d 681). There is accordingly no question that this court is permitted to vacate the default judgment. What requires resolution, however, is the question of whether it should do so. Consideration of this issue necessitates examination of the impact of the judgment of possession on the tenant’s suit for damages.
In Hernandez v Nelson (143 AD2d 632), a default judgment had been entered in favor of the landlord. A warrant was issued and the tenant evicted. The tenant then moved to vacate her default. After a hearing, this court vacated the default and awarded possession to the tenant because of fraudulent conduct by the landlord. The tenant then instituted a suit for damages based upon an alleged wrongful eviction. The Appellate Division, relying on collateral estoppel, held that the Civil Court ruling in tenant’s favor mandated that the tenant be awarded summary judgment in the action for wrongful eviction. Similarly, in Maracina v Shirrmeister (105 AD2d 672, 673) the court stated, "A judgment of possession in favor of the landlord which is later * * * va *510 cated renders the resultant eviction unlawful, and the tenant is thereby entitled to * * * damages. (Dzubey v Teachers’ Coll., 87 AD2d 783.)”
What Hernandez (supra) and Maracina (supra) indicate is that if the tenant’s motion to vacate her default is granted, the eviction will ipso facto become illegal from which it would follow that in any action to recover damages for wrongful eviction she should be awarded summary judgment. On the other hand, it has been held that the existence of a judgment of possession in landlord’s favor is a complete defense to an action for wrongful eviction (Dinolfi v Berkeley Assocs. Co., 98 AD2d 644).
Thus, the status of the subject judgment may very well be determinative of the tenant’s action for wrongful eviction. The emergent issue therefore is whether the tenant should be allowed to use this proceeding in order to affect her action for damages for wrongful eviction. Stated otherwise, should the tenant’s claims for wrongful eviction be determined as part of the instant nonpayment proceeding or in her action seeking damages for wrongful eviction?
It should be borne in mind that the tenant’s original order to show cause to be restored to possession raised two issues: lack of service and payment. A hearing was never held on these questions. While there is some reason to believe that the landlord may have conceded the payment issue, there is no reason to believe that it conceded the service question. The pertinent point is that if there had been proper service to commence the nonpayment proceeding, the default judgment entered against the tenant would seemingly have been prima facie valid, subject to its vacatur if an excusable default and meritorious defense could be shown. These factors all impact on the action for damages for wrongful eviction.
Hence, to grant the tenant the relief she seeks without a hearing would deny the landlord. an opportunity to fully litigate a matter germane to the wrongful eviction action, i.e., was the tenant served before being evicted. While this court could now conduct a hearing, such an approach seems inappropriate. First of all, there is no question that the rent has now been paid so that this nonpayment proceeding becomes moot. (See, Papzaian v Lyons, NYLJ, Dec. 23, 1988, at 25, col 6.) Secondly, and more significantly, where possession is no longer in issue, the forum for litigating the service question should be the action seeking damages for wrongful eviction.
This conclusion is supported by Kolomensky v Wiener (135 *511 AD2d 505) as well as Third City Corp. v Lee (41 AD2d 611). In Kolomensky, the tenants were evicted pursuant to a default judgment of eviction. After obtaining alternate housing, they sought to vacate the default judgment on the grounds that they were never served with process. The Civil Court, while initially ready to hold a hearing, decided to deny any relief because the tenants no longer sought possession. The denial was however, without prejudice to an action for wrongful eviction. The tenants commenced an action for wrongful eviction in the Supreme Court after the Statute of Limitations had run. In affirming the Supreme Court’s dismissal on Statute of Limitations grounds, the Appellate Division stated that the tenants should have started by directly seeking relief in the Supreme Court for wrongful eviction. Similarly, Third City Corp. also involved an eviction contested by the tenant on the grounds of lack of service of process. Possession was no longer an issue since the tenant no longer desired the apartment. In disapproving the determination of the Civil Court and Appellate Term to have a trial on the service issue the Appellate Division stated, "[Tenant] does not desire to be restored as a tenant * * * and [merely seeks to] obtain a dismissal of the nonpayment proceeding to bolster his damage suit. Resort to the Civil Court solely for this limited purpose should not be permitted. [Tenant’s] grievance can be fully litigated in his pending Supreme Court action, [for more than a $1,000,000 in damages]” (supra, 41 AD2d, at 612). Comparative analysis of Kolomensky and Third City Corp. with the instant case shows that where possession of the apartment is no longer an issue (and possession at bar is not in issue since the tenant unquestionably has possession) the proper forum for considering the matter of service of process is the action for damages for wrongful eviction.
Finally, to the extent that the tenant’s motion may be regarded as an effort merely to bolster her wrongful eviction action, Third City Corp. v Lee (supra) specifically disapproves granting any relief.*
*512 In any event, when concern is given to all of the factors at bar, it is apparent that this motion is about another case. It is clear that the judgment entered in this case should not have any effect on the tenant’s wrongful eviction action since the parties have never been heard on the validity of the default. The issues regarding the default judgment should instead be considered where they count — in the tenant’s action for damages for wrongful eviction.
Accordingly, the tenant’s motion is denied.

 The parameters of the antibolstering rule are not hard and fast. In Eight Assocs. v Hynes (102 AD2d 746) the Appellate Division reversed the Civil Court’s and Appellate Term’s refusal to vacate a default judgment of possession even though (1) there was no question that the tenant could not be restored to possession since the new tenant in possession of the apartment had not been made a party to the Civil Court proceedings and (2) the Appellate Division itself relegated the tenant to an action for wrongful eviction.