(September 2, 1999)

◼ DAVID GOLD, Appellant, v ABRAHAM SCHUSTER et al., Respondents. [694 NYS2d 646] —Order, Supreme Court, Bronx County (Kenneth Thompson, Jr., J.), entered on or about March 25, 1998, which, in an action for unlawful eviction, insofar as appealed from, granted defendants' cross-motion to dismiss the complaint as time-barred, unanimously affirmed, without costs.

In July 1993 defendants/landlords entered into a lease with 80-29 Jamaica Avenue Restaurant Corp. (Tenant) on commercial premises located in a building at 881 Tenth Avenue for a term of 11 years. At the same time, and with the consent of defendants/landlords, the lease was assigned by Tenant to plaintiff to secure a loan of $180,000 and plaintiff, in turn, again with the consent of defendants/landlords, sublet the premises back to Tenant. According to plaintiff, he also took a security interest in furnishings and other personal property located on the premises.

Apparently, Tenant never paid any rent under the lease and, three months later, on or about October 6, 1993, defendants/landlords commenced summary non-payment eviction proceedings against Tenant in the Civil Court, Housing Part, in New York County. Plaintiff was not served with the petition or otherwise joined in the non-payment proceeding.

On November 3, 1993, Tenant signed a stipulation agreeing to pay all rental arrears and other amounts that Tenant owed to defendants/landlords. The stipulation also provided: "5. Tenant consents to Final Judgment of possession and a money judgment in the amount of $18,540.00 and the forthwith issuance of the warrant of eviction, execution thereof being stayed so long as Tenant fully complies herewith. In the event that Tenant defaults hereunder, Landlord can execute on the warrant on ten (10) days prior written notice to Tenant's attorney

by regular mail or FAX * * * during which time Tenant may cure any such default." A copy of the stipulation was forwarded to plaintiff on November 5, 1993.

The warrant of eviction issued on or about November 16, 1993 and, upon the failure of Tenant to pay the rental arrears or otherwise comply with the stipulation, the defendants/landlords served Tenant with a "72 Hour Notice" on November 30, 1993.

On December 3, 1993, Tenant filed a petition for Chapter 11 Bankruptcy, bringing into play the automatic stay provisions of Bankruptcy Code (11 USC) § 362. Pursuant to defendants/landlords' motion, on January 24, 1994, the United States Bankruptcy Court for the Southern District of New York modified the automatic stay to allow defendants/landlords to proceed in the Civil Court with respect to all rights that they had against Tenant, and directed Tenant to pay defendants/landlords $4,635 per month from December 3, 1993 to the date it vacated the premises or was evicted.

Plaintiff, as assignee of the lease, moved in the Civil Court to vacate the warrant of eviction alleging, among other things, that the lease had been assigned to him and the premises then subleased back to Tenant with the consent of defendants/landlords and that the summary proceeding was wrongfully commenced without notice to him. Civil Court denied the motion. Plaintiff thereupon appealed to the Appellate Term, where he was granted a stay of the warrant of eviction pending appeal conditioned upon his deposit of $18,540 with the Civil Court and payment of rent or use and occupancy at a rate of $4,635 per month for the months of December, to and including, April 1994.

Plaintiff neither deposited the amount of rental arrears into court nor paid rent or use and occupancy for December through April, and the warrant of eviction was executed by the City Marshal on April 27, 1994. According to plaintiff's affidavit, "the defendants changed the locks and removed all of the furnishings and/or personal belongings in which I held a security interest".

By order entered March 15, 1995, the Appellate Term reversed the Civil Court order denying plaintiff's motion to vacate the warrant of eviction upon the ground that plaintiff, as the named assignee of Tenant, was a necessary party to the underlying commercial non-payment proceeding and should have been served with the rent demand notice, the notice of petition, and the petition.

Plaintiff then commenced this action seeking treble damages

under RPAPL 853 for defendants/landlords' purported wrongful eviction of him. His damage claim is based on allegations that he suffered a loss of $180,000 due to Tenant's failure to repay the loan. After joinder of issue, plaintiff moved for summary judgment and defendants/landlords cross-moved for, *inter alia*, leave to amend their answer to include additional affirmative defenses and for judgment on those defenses. Supreme Court, *inter alia*, granted defendants/landlords' motion to amend their answer to assert a Statute of Limitations defense and granted the motion to dismiss the complaint as untimely based on its finding that a cause of action for wrongful eviction under RPAPL 853 arises at the time of the actual ouster from the premises rather than when the eviction is subsequently ruled unlawful.

We affirm.

At the outset, we note that plaintiff has not made any argument on this appeal that he is entitled to damages or other relief based on a breach of the lease by defendants/landlords (*see, Dzubey v Teachers' Coll.*, 87 AD2d 783) and, indeed, has never contested defendants/landlords' assertion that they never received any payments under the lease from either Tenant or himself. Thus, his claim that he is entitled to damages for wrongful eviction is based solely on defective process, i.e., the failure to serve him. His claim that those damages should be trebled is based on RPAPL 853, which provides: "If a person is disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means, he is entitled to recover treble damages in an action therefor against the wrongdoer."

"Wrongful eviction" claims are governed by the one-year Statute of Limitations applicable to intentional torts (*see, Ocean Grille v Pell*, 226 AD2d 603; *Jemison v Crichlow*, 139 AD2d 332, *affd on other grounds* 74 NY2d 726; *Kolomensky v Wiener*, 135 AD2d 505, *lv denied in part and dismissed in part* 72 NY2d 873).

Generally, courts have held that the Statute of Limitations begins to run at such time that it is reasonably certain that the tenant has been unequivocally removed with at least the implicit denial of any right to return (*Yokley v Henrey-Clark Assocs.*, 164 Misc 2d 177, *revd on other grounds* 170 Misc 2d 779; *see also, Ocean Grille v Pell*, *supra*, 226 AD2d, at 605-606).

However, here, plaintiff argues that his purported eviction did not become "unlawful" for Statute of Limitations purposes

until it was deemed so on appeal. His argument is based on language in *Maracina v Shirrmeister* (105 AD2d 672, 673), in which this Court stated that "[a] judgment of possession in favor of the landlord which is later reversed or vacated *renders the resultant eviction unlawful*" (emphasis supplied). However, *Maracina* did not involve a Statute of Limitations question, but, instead, dealt with the issue of whether an eviction was, in fact, "unlawful" within the meaning of RPAPL 853. We reject plaintiff's attempt to extend the reasoning in *Maracina* to delay the accrual of an action for unlawful eviction until after a court has ruled that the eviction was unlawful (*see, Kolomensky v Wiener, supra*). Thus, here, since the actual eviction took place on April 27, 1994, the action, commenced in May 1995, was untimely.

Moreover, we note that, even if plaintiff's action were timely, he has not stated a cause of action under RPAPL 853. A claim under this provision is only available to one evicted from property of which he or she was in actual possession (*ZCWK Assocs. v Spadaro*, 233 AD2d 126). In this case, there is no evidence that plaintiff ever had or sought possession of the premises. At most, plaintiff claims to have been an assignee of the original lease, Tenant's sublessor, and the holder of a security interest in the personalty that was allegedly removed from the premises during the eviction. None of these statuses entitles him to invoke the protections of RPAPL 853. Concur— Ellerin, P. J., Tom, Lerner, Buckley and Friedman, JJ.